# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:23-CV-00196-RJC-SCR

| | |
|---|---|
| P1 GROUP, INC., | )
| Plaintiff, | )
| v. | ) **MEMORANDUM AND RECOMMENDATION**
| RIPKURRENT, LLC et. al., | )
| Defendants. | ) |

**THIS MATTER** is before the Court on a Motion to Dismiss for Lack of Personal Jurisdiction by Defendants Dye Capital & Company, LLC and Justin C. Dye (collectively, the "Dye Defendants") (Doc. No. 37), as well as the parties' briefs and exhibits. (Doc. Nos. 38 & 41-42).[1]

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and the Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record and the applicable authority, the undersigned respectfully recommends that the Dye Defendants' Motion to Dismiss for Lack of Personal Jurisdiction be granted.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff P1 Group, Inc. is a construction services corporation organized under the laws of

---

[1] Separate from the Dye Defendants, Defendant RipKurrent does not dispute that the Court has personal jurisdiction over it. Accordingly, this action will proceed against Defendant RipKurrent.

Kansas with its principal place of business located in Johnson County, Kansas (Doc. No. 22 at 1). Plaintiff asserts that Defendant RipKurrent, LLC breached its contract by failing to pay an outstanding balance to Plaintiff. Id. at 6. Plaintiff further asserts that Defendant RipKurrent fraudulently transferred funds to Defendants Dye Capital & Company, LLC ("Dye Capital") and Justin C. Dye ("Dye"), resulting in Defendant RipKurrent's inability to fully compensate Plaintiff as a creditor. Id. at 6-9.

Defendant RipKurrent was a Florida limited liability company with a principal place of business in Palm Beach County, Florida. (Doc. No. 38 at 5). Defendant RipKurrent offered advanced energy and digital solutions to various entities and engaged in two major business functions: (1) the distribution of HVAC equipment and (2) providing design and build services. Id. Defendant RipKurrent became insolvent in December 2021. Id. at 4. According to Defendant RipKurrent's 2019 Second Amended and Restated LLC Agreement, its members included non-parties Dye Capital LLLP, Jade Culbertson, Nirup Krishnamurthy, and Matt Green. (Doc. No. 23-6).

Defendant Dye Capital & Company, LLC is a private equity limited liability company organized under the laws of Delaware with its principal place of business located in Palm Beach County, Florida. (Doc. No. 22 at 1). Defendant Dye Capital & Company, LLC is a separate and distinct entity from non-party Dye Capital LLLP. (Doc. No. 38 at 6).

Defendant Dye is the "managing general partner" of Defendant Dye Capital. (Doc. No. 23-7 at 3). Defendant Dye was also the Chief Executive Officer ("CEO"), registered agent and on the Board of Directors for Defendant RipKurrent, and the authorized signatory for non-party Dye Capital LLLP. (Doc. No. 23-6 at 4). Defendant Dye is a resident and citizen of Florida. (Doc. No. 23-7 at 2).

At some time not specified in the record, Defendant RipKurrent entered into contract with non-party Berry Global Films, LLC ("Berry") for the construction of certain improvements to a property owned by Berry in Matthews, North Carolina (the "Project"). (Doc. No. 22 at 3). Sometime in the first half of 2021, Plaintiff and Defendant RipKurrent discussed the potential for Plaintiff to perform work on the Project. (Doc. No. 41 at 3). On June 22, 2021, Plaintiff presented Defendant RipKurrent with a proposal to fabricate and furnish certain materials for the Project, which Defendant RipKurrent accepted shortly thereafter and resulted in a contract being formed between Plaintiff and Defendant RipKurrent.[2] Id. Under the contract terms, Plaintiff "provided the design, fabrication, installation, and repair of piping to the Project, together with the installation of certain equipment in the Project mechanical room." Id. At Defendant RipKurrent's request, Plaintiff provided additional services to the Project through a series of change orders. Id. Throughout the course of the Project, running from July to December 2021, Plaintiff submitted invoices to Defendant RipKurrent which covered the expenses of the contracted work and the change order work. Id. The total expenses for Plaintiff's work, as indicated by the invoices, was $1,567,457.94. (Doc. No. 22-11). (See also Doc. Nos. 22-4 to -7).

In or around December 2021, Defendant RipKurrent allegedly became insolvent and notified Plaintiff that it would not pay the outstanding balance for the work Plaintiff performed on the Project. (Doc. No. 41 at 3-4). On December 17, 2021, Plaintiff sent a letter to Defendant RipKurrent regarding the outstanding balance, stating that Plaintiff would cease all work related to the Project as a result of Defendant RipKurrent's payment default. (Doc. No. 23-2 at 25). On January 21, 2022, Plaintiff's legal representation sent a letter to Defendant Dye—in the capacity

---

[2] Relevant to the personal jurisdiction analysis, Plaintiff did not allege that Defendant Dye was involved in these negotiations. Plaintiff's Exhibit 1, attached to its SAC, indicated the proposal was sent to non-party Jon Nixon at RipKurrent. (Doc. No. 22-1).

of CEO and registered agent of Defendant RipKurrent—demanding the full payment of work performed on the Project and noting that failure to do so would result in legal action. (Doc. No. 22-11).

In February 2022, Defendant RipKurrent initiated an assignment for the benefit of creditors action (the "ABC Action") in Florida. (Doc. No. 38 at 4). The ABC Action assignee identified $120,207.05 in assets of Defendant RipKurrent available to distribute to creditors. (Doc. No. 23-3 at 3). The ABC Action concluded in September 2022, with Plaintiff receiving $61,318.08. (Doc. No. 23-3 at 8).

On March 11, 2022, Plaintiff filed an initial complaint in North Carolina state court against Defendant RipKurrent and Berry for breach of contract and resolution of filed lien claims on the funds owed to Plaintiff and the Project property in Matthews, North Carolina. (Doc. No. 1-1 at 3-6). In February 2023, Plaintiff voluntarily dismissed its claims against Berry and filed an amended complaint that removed the lien claims and added the Dye Defendants. (Doc. Nos. 1-2 & 1-3). The amended complaint retained the breach of contract claim against Defendant RipKurrent, adding claims of fraudulent transfer of funds to an insider between Defendant RipKurrent and the Dye Defendants and piercing the veil of Defendant RipKurrent to hold the Dye Defendants liable for the outstanding payments. (Doc. No. 1-3). On April 4, 2023, Defendants filed a Notice of Removal. (Doc. No. 1).

On June 22, 2023, Plaintiff filed a Second Amended Complaint ("SAC") alleging the same claims but refining the claims of fraudulent transfer to an insider pursuant to both North Carolina and Florida law. (Doc. No. 22 at 6-9). Defendants again filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). (Doc. No. 23). After Plaintiff's request, this Court granted Plaintiff's Alternative Motion for Jurisdictional Discovery on September 12, 2023. (Doc.

No. 26, 27, & 30). This Court's order set a deadline for limited jurisdictional discovery of January 10, 2024. Id. at 4.

Despite having two weeks in September, and all of October and November, Plaintiff waited until near the end of the limited jurisdictional discovery period to serve written discovery on Defendants and further waited until December 28, 2023, to contact Defendants to schedule depositions. (Doc. No. 36 at 1). Defendants provided written responses to discovery but objected to the short notice for the deposition timeline. Id. at 2. In its February 5, 2024, order granting Defendants' Motion for Protective Order and Enforce Deadline to Complete Jurisdictional Discovery, this Court noted that "[p]lantiff's predicament – both in scheduling depositions and obtaining supplemental written discovery – [was] a product of its own lack of diligence." Id. at 2-3.

Now, the Dye Defendants, in their renewed and pending motion, ask the Court to dismiss Plaintiff's Second Amended Complaint (Doc. No. 22) as to the Dye Defendants for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), and dismiss Plaintiff's piercing the veil claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 37).

Having concluded that the Court lacks personal jurisdiction over the Dye Defendants, as discussed below, the Court need not reach the Motion to Dismiss the SAC's piercing the veil claim for failure to state a claim upon which relief can be granted. Malone v. Breggin, No. 3:22-cv-00063, 2024 WL 1315910, at *7 (W.D. Va. Mar. 27, 2024).

## II. DISCUSSION

### A. Standard of Review

"When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff

ultimately to prove the existence of a ground for jurisdiction." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989) (citing 2A Moore's Fed. Prac. ¶ 12.07[2.2]).  In cases where "the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge." Grayson v. Anderson, 816 F.3d 262, 268 (4th Cir. 2016); see also Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 561 (4th Cir. 2014).  "In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs, 886 F.2d at 676; see also Universal Leather, LLC, 773 F.3d at 558.  However, courts need not assume the truth of allegations in a pleading which are contradicted by affidavit. Wolf v. Richmond Cnty. Hosp. Auth., 745 F.2d 904, 908 (4th Cir. 1984); Clark v. Remark, 993 F.2d 228, 1993 WL 134616, at *2 (4th Cir. 1993) (unpublished table decision).

If jurisdictional discovery has occurred, the Court also may require a plaintiff to prove personal jurisdiction by a preponderance of the evidence. Grayson, 816 F. 3d at 268.  The Fourth Circuit has explained that this requires an "evidentiary hearing," but this does not automatically involve or require evidence orally taken in open court. Id.  Rather, the Court must "afford the parties a fair opportunity to present both the relevant jurisdictional evidence and their legal arguments." Id.  The Court may consider jurisdictional evidence in the form of interrogatory answers, admissions, or other appropriate forms. Id. at 269.

### B. Personal Jurisdiction

"It is axiomatic that, in order for a district court to validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied.  First, the exercise of jurisdiction must

be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001) (citing Stover v. O'Connell Assocs. Inc., 84 F.3d 132, 134 (4th Cir. 1996)). "North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4, governs the reach of federal courts in North Carolina over out-of-state defendants, subject to the federal constitutional constraints of the Due Process Clause of the Fourteenth Amendment on the state's application of its long-arm statute." True Homes LLC v. Clayton Homes, Inc., No. 3:18-CV-000345-KDB-DCK, 2020 WL 6528861, at *11 (W.D.N.C. Nov. 5, 2020). "Courts have long held . . . that North Carolina's long-arm statute extends to the maximum boundaries allowed by the Due Process Clause." Id. (citing English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990)); see also Universal Leather, LLC, 773 F.3d at 558; Ctr. for Cmty. Self-Help v. Self-Fin., Inc., No. 1:21-CV-862, 2023 WL 1779831, at *2 (M.D.N.C. Feb. 6, 2023) (citing Dillon v. Numismatic Funding Corp., 231 S.E.2d 629, 630 (N.C. 1977)).

North Carolina's long-arm statute provides, inter alia, "for jurisdiction over any validly served—defendant who 'is engaged in substantial activity within [North Carolina], see N.C. Gen. Stat. § 1-75.4(1)(d), or whose act or omission gave rise to the action claiming injury to person or property in North Carolina, see N.C. Gen. Stat. § 1-75.4(3)." Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist, 259 F.3d at 215. "Thus, the dual jurisdictional requirements collapse into a single inquiry as to whether the defendant has such 'minimal contacts' with the forum state that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Id. (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)); see also UMG

Recordings, Inc. v. Kurbanov, 963 F.3d 344, 351 (4th Cir. 2020) (quoting Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009)).

Under the Due Process Clause, a court can have personal jurisdiction over a defendant in either of two ways: (1) "general personal jurisdiction over a defendant who has continuous and systematic contacts with the forum state regardless of whether the relevant conduct occurs," or (2) "specific personal jurisdiction, which requires only that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state." Wall Recycling, LLC v. 3TEK Glob., LLC, 497 F. Supp. 3d 30, 37 (M.D.N.C. 2020) (quoting Pan-Am. Prod. & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 677 (M.D.N.C. 2011)); ALS Scan, Inc. v. Digit. Serv. Consultants, Inc. 293 F.3d 707, 711-12 (4th Cir. 2002). Here, the parties agree that this Court does not have general personal jurisdiction over any of Defendants. (See Doc. No. 38 at 7-8 & Doc. No. 41 at 5). The undersigned agrees, and as a result, will proceed with analyzing specific jurisdiction.

### C. Specific Jurisdiction

A court may exercise specific jurisdiction when "the defendant has purposefully directed [its] activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985); Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 592 U.S. 351, 359 (2021) (noting that as compared to general jurisdiction, specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims."); Int'l Shoe Co., 326 U.S. at 319.

The Fourth Circuit evaluates the following factors to determine whether the exercise of specific jurisdiction is appropriate: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claim[]

arise[s] out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." UMG Recordings, Inc., 963 F.3d at 351-52 (quoting Consulting Eng'rs Corp., 561 F.3d at 278); Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 189 (4th Cir. 2016) (quoting ALS Scan, Inc., 293 F.3d at 712); dmarcian, Inc. v. dmarcian Eur. BV, 60 F.4th 119, 133 (4th Cir. 2023).

As to this first prong, purposeful availment, courts require that the defendant create a "substantial connection" with the forum by "deliberately" engaging in activities with the forum state or by creating "continuing obligations" with the forum state's residents. Burger King Corp., 471 U.S. at 475-76. This requirement ensures that a defendant will not be subject to jurisdiction based on "random," "fortuitous," or "attenuated" contacts with the forum or the "unilateral activity of another party or a third person." Id. at 475.

"The second prong of the test for specific jurisdiction—that the plaintiff's claims arise out of the activities directed at the forum—requires that the defendant's contacts with the forum state form the basis of the suit." Consulting Eng'rs Corp., 561 F.3d at 278-79. Under this prong, courts consider the "effects test" such that personal jurisdiction is proper when "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 398 n.7 (4th Cir. 2003) (citing IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 265-66 (3d Cir. 1988)).

In considering the third prong of specific personal jurisdiction, constitutional reasonableness, courts "ensure the appropriateness of the forum." Consulting Eng'rs Corp., 561 F.3d at 279. Courts consider factors including:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

Id.

Here, the parties agree that Defendant RipKurrent has sufficient minimum contacts with North Carolina and that those contacts give rise to Plaintiff's claims, such that the exercise of personal jurisdiction over Defendant RipKurrent is proper. (See Doc. No. 38 at 7 & Doc. No. 41 at 6). The issue before the Court is whether there are sufficient contacts by the Dye Defendants.

There is little to nothing in the record demonstrating that the Dye Defendants had any contacts with North Carolina that would demonstrate that they "purposefully directed [their] activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." Burger King, 471 U.S. at 475-76. (See Doc. No. 38 at 8-9 & Doc. 22). Defendant Dye Capital has no projects or business relationships in North Carolina; has no office, employees, or any property in North Carolina; pays no taxes in North Carolina and has not sought authorization to do business in North Carolina. (Doc. No. 23-5 at 3-4). Similarly, Defendant Dye is a Florida resident with a lack of connections to North Carolina. He has no personal business relationships in North Carolina; has no office, employees, or property in North Carolina and has not sought authorization to do business in North Carolina. (Doc. No. 38-2 at 3).

Given a lack of direct action on the part of either Dye Defendant that would establish sufficient contacts in North Carolina, Plaintiff instead contends that this Court can exercise jurisdiction over the Dye Defendants on an agency or alter ego theory, seeking to pierce the veil between Defendant RipKurrent and the Dye Defendants.[3] (Doc. No. 41 at 5).

---

[3] While not expressly raised by Plaintiff and thus the argument would be subject to waiver, the Court recognizes that the "effects test" could permit a single tortious act to establish purposeful availment to a forum state. Calder v. Jones,

**D. Agency or Alter Ego Theory – Piercing the Veil Between Defendants**

"For purposes of specific personal jurisdiction, the contacts of a third-party may be imputed to the defendant under either an agency or alter ego theory." Celgard, LLC v. SK Innovation Co., 792 F.3d 1373, 1379 (Fed. Cir. 2015). Defendant RipKurrent's contacts would be imputed to the Dye Defendants under the doctrine of piercing the corporate veil, which also applies to an LLC. See Tee Feral Golf, LLC v. MJM Golf, LLC, No. 21-1648, 2022 WL 17546943, at *1 (4th Cir. Dec. 9, 2022) (noting that the district court granted defendant's request to pierce the veil of an LLC). "The doctrine of piercing the corporate veil is not a theory of liability. Rather, it provides an avenue to pursue legal claims against corporate -officers and directors who would otherwise be shielded by the corporate form." Central Nat'l Gottesman, Inc. v. Nakos Paper Products, Inc., No. 3:18-cv-640-RJC-DSC, 2019 WL 7670103, at *8 (W.D.N.C. Aug. 28, 2019), M&R adopted, No. 3:18-cv-640-RJC-DSC, 2019 WL 5420103 (W.D.N.C. Oct. 23, 2019) (quoting Green v. Freeman, 749 S.E.2d 262, 271 (N.C. 2013)). Jurisdictions vary on when to pierce the corporate veil, requiring this Court to determine which state's law applies. 1 Fletcher Cyc. Corp. § 41 (2023).

In diversity cases, "a district court applies the conflict-of-law rules of the state in which it sits." DiFederico v. Marriott Int'l, Inc., 714 F.3d 796, 807 (4th Cir. 2013). "If the North Carolina Supreme Court were faced with a choice of law question for piercing the corporate veil, it would adopt the internal affairs doctrine and apply the law of the state of incorporation." Dassault Falcon Jet Corp. v. Oberflex, Inc., 909 F. Supp. 345, 349 (M.D.N.C. 1995). See also Al Hamra Trading, Est. v. Diamondback Tactical, LLLP, No. 1:12-cv-00373-MR-DLH, 2014 WL 5023488, at *9 (W.D.N.C. Oct. 8, 2014). Here, Defendant RipKurrent was an LLC organized under the laws of

---

465 U.S. 783 (1984). However, even if Plaintiff raised this argument, the Court would be hard pressed to find personal jurisdiction over either of the Dye Defendants because Plaintiff is a Kansas corporation, and thus any harm suffered, either from non-payment, fraudulent transfer, or otherwise, would likely be felt in Kansas, and not in North Carolina. (Doc. No. 22 at 1).

Florida. (Doc. No. 38 at 10). Thus, this Court will apply Florida law to determine whether to pierce the corporate veil between Defendant RipKurrent and the Dye Defendants.[4]

Florida law has three factors to determine whether to pierce the corporate veil:

> (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

In re Hillsborough Holdings Corp., 166 B.R. 461, 468-69 (Bnkr. M.D. Fla. 1994) (citing Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114 (Fla. 1984)). The language of these factors indicates that the veil can only be pierced against a shareholder of a corporation or a member of an LLC. Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330, 1351 (11th Cir. 2011); see also 48 A.L.R.6th 1 ("A limited liability company (LLC) is a hybrid business entity that offers its members limited liability as if they were shareholders of a corporation"). Thus, the question of piercing the corporate veil in this case—and ultimately the question of personal jurisdiction over the Dye Defendants—turns on whether the Dye Defendants were members of Defendant RipKurrent.

### 1. Jurisdictional Claim Over Defendant Dye Capital

Plaintiff generally groups the Dye Defendants together in its allegations, even when its supporting facts only speak to connections between Defendant Dye and Defendant RipKurrent. (See Doc. Nos. 22, 26 & 41). At most, Plaintiff appears to make a conflation between Defendant Dye Capital & Company, LLC and non-party Dye Capital LLLP.[5] Id. However, Defendants have

---

[4] While this Court will apply Florida law to determine whether piercing the corporate veil between Defendants is warranted, the factors used in both Florida and North Carolina are nearly identical. Compare In re Hillsborough Holdings Corp., 166 B.R. at 468-69 with Allred v. Exceptional Landscapes, Inc., 743 S.E.2d 48, 54 (N.C. Ct. App. 2013). This Court would reach the same conclusion whether conducting the analysis under Florida or North Carolina law.

[5] Despite the frequent conflation, Plaintiff acknowledges the difference between the two entities. (Doc. No. 41 at 2). However, even with this acknowledgement, Plaintiff continues its arguments in opposition of the present motion as if Defendant Dye Capital & Company, LLC is non-party Dye Capital LLLP by alleging that the Dye Defendants collectively "held or hold complete domination . . . in [Defendant] RipKurrent." (Doc. No. 41 at 6).

established that Defendant Dye Capital & Company, LLC—which was not a member of Defendant RipKurrent—and non-party Dye Capital LLLP—which was a member of Defendant RipKurrent—are distinct and separate entities. (Doc. No. 38 at 6). (See also Doc. No. 38-1 at 2, 48).

Plaintiff has provided no information establishing that Defendant Dye Capital & Company, LLC is the same legal entity as non-party Dye Capital LLLP, or that Defendant Dye Capital & Company, LLC originally was or became a member of Defendant RipKurrent. (See Doc. No. 41). In fact, Plaintiff did not even address these arguments presented by Defendants, which leaves the issue undisputed that Defendant Dye Capital & Company, LLC was not a member of Defendant RipKurrent. See Bigelow Corp. Hounds Town USA, LLC, No. 3:23-CV-00134-FDW-SCR, 2023 WL 4939386, at *3 (W.D.N.C. Aug. 2, 2023) (quoting Brown v. Nucor Corp., 785 F.3d 895, 923 (4th Cir. 2015) ("The Fourth Circuit made clear that a 'party waives an argument … by failing to develop its argument'"). Since Florida law does not permit a plaintiff to pierce the veil against a non-member, and Defendant Dye Capital & Company, LLC is not a member of Defendant RipKurrent, Plaintiff cannot succeed in piercing the veil against Defendant Dye Capital & Company, LLC. Molinos, 633 F.3d at 1351.

Plaintiff, while failing to address the specific membership requirement to pierce the veil, asserts that the veil can still be pierced based on its allegations that the Dye Defendants "held or hold complete domination, not only of finances, but of policy and business practices, in [Defendant] RipKurrent." (Doc. No. 41 at 6). As support to this allegation, Plaintiff points out that Defendant Dye Capital's principal place of business and Defendant RipKurrent's principal place of business share the same physical address. Id. at 9. This Court could reasonably infer that Defendant Dye Capital had some degree of control over Defendant RipKurrent, despite its lack of membership of the LLC. However, even if *arguendo* Florida law did allow piercing the veil

against non-members, this fact alone—as other facts presented in the record only seem to implicate control on the parts of Defendant Dye and non-party Dye Capital LLLP—can hardly raise to a level of domination or control "to such an extent that the [LLC's] independent existence, was in fact non-existent and [Defendant Dye Capital] [was] in fact [an] alter ego[] of the [LLC]." In re Hillsborough Holdings Corp., 166 B.R. at 468.

Being unable to pierce the veil between Defendant RipKurrent and Defendant Dye Capital, this Court cannot exercise specific personal jurisdiction over Defendant Dye Capital.

### 2. Jurisdictional Claim Over Defendant Dye

Plaintiff alleges that this Court can pierce the veil against Defendant Dye because he "held or hold[s] complete domination, not only of finances, but of policy and business practices, in [Defendant] RipKurrent." (Doc. No. 41 at 6). This allegation is supported by the fact that Defendant Dye "served as the CEO, 'investor and Chairman,' sole managing member, and Registered Agent of [Defendant] RipKurrent." Id. at 9-10. However, as discussed above, Defendant Dye's service in these positions—absent evidence of membership in Defendant RipKurrent—cannot form the basis of piercing the veil under Florida Law.[6] Molinos, 633 F.3d at 1351.

Defendant Dye, by affidavit, denies ever being a member of Defendant RipKurrent. (Doc. No. 38-2 at 2). Unlike its allegations against Defendant Dye Capital, Plaintiff did provide some information that Defendant Dye was a member of Defendant RipKurrent. (Doc. No. 41 at 7). Plaintiff provided two court filings from Defendant RipKurrent from a separate and unrelated

---

[6] Even if *arguendo* Florida law did not require membership to pierce the veil, Defendants also presented affidavits saying that decisions regarding Defendant RipKurrent—such as initiating the ABC Action—were done by all members of Defendant RipKurrent. (Doc. No. 38-1 at 3). This suggests that whatever control Defendant Dye had over Defendant RipKurrent in his capacities as CEO or Registered Agent were not "to such an extent that the [LLC's] independent existence, was in fact non-existent and [Defendant Dye] [was] in fact [an] alter ego[] of the [LLC]." In re Hillsborough Holdings Corp., 166 B.R. at 468.

lawsuit which state that Defendant Dye is or was "the sole managing member of RipKurrent." (See. Doc. Nos. 22-8 & 22-9). These filings on the part of Defendant RipKurrent, while not binding in this case, may serve as admissions. See Southwood v. Credit Card Sol., No. 7:09-CV-00081-F, 2016 WL 8710985, at *14 (E.D.N.C. Feb. 26, 2016), R&R adopted sub. nom. SouthWood v. CCDN, LLC, No. 7:09-CV-183-F, 2016 WL 1289596 (E.D.N.C. Apr. 7, 2016), aff'd sub nom. Taylor v. Bettis, 693 F. App'x 190 (4th Cir. 2017). Defendants provided an affidavit reiterating that Defendant Dye was never a member of Defendant RipKurrent, and the court filings stating otherwise were made in error. (Doc. No. 38-1 at 4). While stating the admissions in the filings were made in error, Defendants are unable to explain why the error occurred and did not provide any evidence that the error was corrected. Id.

Plaintiff argues that Defendants cannot retract the damaging admissions in a written statement without good explanation, meaning that this Court should conclude Defendant Dye was a member of Defendant RipKurrent. (Doc. No. 41 at 7 citing Higgins v. Mississippi, 217 F.3d 951, 955 (7th Cir. 2000)). However, Plaintiff reads the conclusion drawn in Higgins too broadly, given the different procedural posture compared to the present case and unanalogous facts. The court in Higgins supports its conclusion—a decision on summary judgment—by citing a Supreme Court decision which specifically says that "a party cannot create a genuine dispute of material fact sufficient to survive summary judgment simply by contradicting [its] own previous sworn statement … without explaining the contradiction." Cleveland v. Pol'y Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999). The Higgins Court even acknowledged its conclusion was an exception to the standard of summary judgment, not the broader principle of weighing evidentiary admissions. 217 F.3d at 955. An evidentiary admission, not related to a motion for summary judgment, "would just be one more bit of evidence to weigh against [the defendant's] denial." Id. at 954.

Defendants presented by affidavit Defendant RipKurrent's Second Amended and Restated Limited Liability Company Agreement ("Agreement") which does not include Defendant Dye as a member, but rather as CEO and director of Defendant RipKurrent, and authorized signatory of non-party Dye Capital LLLP. (Doc. No. 38-1 at 48). Further, the affidavit presented by Defendants states that the Agreement has never since been amended, meaning no new members were added. Id. at 3. Plaintiff presented no counter affidavit or additional evidence establishing that the LLC's membership had been altered or was otherwise incorrect, despite acknowledging its burden to counter evidence presented by Defendants.[7] (Doc. No. 41 at 6) (citing IMO Industries, 2006 WL 3780422, at *1).

Plaintiff has not met its burden in establishing personal jurisdiction over the Dye Defendants.[8] Being unable to pierce the veil between Defendant RipKurrent and Defendant Dye—given that such a veil does not seem to exist—this Court cannot exercise specific personal jurisdiction over Defendant Dye.

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the Dye Defendants' Motion to Dismiss (Doc. No. 37) be **GRANTED**. Specifically, the Dye Defendants' Motion be **GRANTED** for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) as to the Dye Defendants, and any claims against the Dye Defendants in the Second Amended Complaint be **DISMISSED WITHOUT PREJUDICE**.

---

[7] This Court does not go so far as to say that this evidence does not exist, merely that it was not collected during limited jurisdictional discovery or presented in opposition to Defendants' motion. As noted above, Plaintiff delayed scheduling depositions and seeking supplemental written discovery such that notice of these discovery requests only left Defendants five business days to respond and prepare. (Doc. No. 36 at 2). Any gaps in evidence that render Plaintiff unable to counter Defendants' evidence is the result of Plaintiff's "own lack of diligence." Id.

[8] The Court finds Plaintiff has not met its burden applying the preponderance of the evidence standard, but even if the Court were to apply the prima facie standard, the result would be the same.

## IV. TIME FOR OBJECTIONS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel and to the Honorable Robert J. Conrad.

**SO ORDERED AND RECOMMENDED.**

Signed: August 13, 2024

_____
Susan C. Rodriguez
United States Magistrate Judge